No. 3897

Second Circuit

———

KER TEXADA v. THE TEXAS & PAC.
RY. CO.

———

(January 27, 1931.  Opinion and Decree.)
(February 26, 1931.  Rehearing Refused.)

———

George J. Ginsberg, of Alexandria, attorney for plaintiff, appellee.

Peterman, Dear & Peterman, of Alexandria, attorneys for defendant, appellant.

DREW, J.  Plaintiff sued The Texas & Pacific Railway Company for the sum of $365.05, with interest thereon from judicial demand, alleging that on the 4th day of February, 1929, as owner and seller, he delivered unto the defendant at its cattle loading pen in the city of Alexandria, forty head of cattle, consisting of cows, yearlings, bulls and steers, for shipment and delivery to C. H. Rice & Son, of New Orleans.  That the cattle were in good condition and being shipped for immediate disposal and slaughter.  That the consideration for transporting same was the regular traffic freight charges, which were paid by the consignee at destination.  That the shipment arrived at destination on the 6th day of February,

1929, at which time six of the animals were found to be dead and three were so badly bruised and crippled that it was necessary that they be condemned. That the entire nine animals were a total loss to him. That the death and injuries were sustained while in transit and on the railway of defendant. That the injuries and death of the said animals were caused simply, solely and entirely, and as a direct and proximate result of the negligence, carelessness, lack of attention, mishandling, and failure to care properly for said shipment while in transit on the part of the agents, employees, or representatives of said defendant. That the value of the nine animals was $265.05, and that amicable demand was made upon defendant for payment prior to sixty days immediately preceding the filing of this suit, which demand was refused and that plaintiff is entitled to penalties in the additional sum of $100. He prays for judgment accordingly.

Defendant answered admitting the shipment, and denying responsibility for the damage. It denies that the cattle were in good condition at the time they were loaded. It admits amicable demand, but denies the right of plaintiff to recover the $100, as penalty. Further answering, defendant alleges that the said cattle for the value of which this suit is instituted were among forty head of mixed cattle received from the plaintiff at Alexandria, Louisiana, for shipment over its line, consigned to C. H. Rice & Son, New Orleans; that forty head were loaded into the car by defendant's agents and that no one represented plaintiff in charge of said shipment; that the animals were loaded in the car at Alexandria at 9:30 p. m., February 4, 1929, and shipment moved two hours later, arriving at Gouldsboro at 1:50 p. m., February 5, 1929, and when unloaded in the pens forty minutes later, five of the animals were found dead, one died later in the pens, and four other animals were injured. That thirty-four head of said cattle were reloaded and delivered without delay at destination; that there was no rough handling of the said car containing the animals during its transportation nor was said car or train subjected to any unusual jars, jolts or accident. That before said car reached its destination, the conductor in charge of the train found two head down at Addis station, and four dead upon the arrival of the train at Gouldsboro, opposite New Orleans. That the fatal injury to six of the animals and the injury to four others not killed were due entirely to the fact that two large cows comprising part of the shipment, attacked and fought the other cattle, drove them into one end of the car and caused the injuries alleged. That said shipment was made under written contract which inter alia contained the following conditions:

"No carrier will be liable for, or on account of any injury or death sustained by said livestock occasioned by any of the following causes: Overloading, crowding one upon another; escaping from cars, pens or vessels; kicking or goring, or otherwise injuring themselves or each other."

It further alleges that the injuries sustained by the said cattle were due entirely to injury inflicted on themselves or each other during transit and were in no particular the result of any fault, negligence or mishandling on the part of defendant. It prays that the demands of plaintiff be rejected.

The judgment of the lower court was in favor of plaintiff in the sum of $245, with legal interest thereon from judicial demand until paid, being the value of the cattle killed and injured; and rejecting plaintiff's

demand for penalties. From this judgment, the defendant has appealed and plaintiff has not answered the appeal.

Plaintiff drove the forty head of mixed cattle from his home to the stock pens at Alexandria, a distance of seventeen miles, delivering them in the pens at two o'clock in the afternoon of February 4, 1929. At 9:30 that night, defendant, through its agents, loaded the cattle into the car, the testimony of defendant's agent who received the cattle in the pen and supervised the loading of them into the car being that the cattle were in good condition. Among the forty head of cattle were some large cows and some small yearlings, being about the general run of mixed cattle. It appears that there were two extra large cows in the bunch. The car was not overloaded and the cattle caused no trouble in being loaded into the car. The large cows were not separated from the smaller cattle, but all loaded in one car together. Plaintiff, nor any of his agents, were present when the cattle were loaded, but upon delivering them to defendant's agent at the stock pens of defendant at two o'clock in the afternoon, were told or given to understand that defendant would load the cattle. The train which moved this car to New Orleans was made up at 11:30 that night, and the conductor testified that before leaving Alexandria he inspected his train and found several head of the cattle down in the car. That he was delayed about twenty minutes in leaving in order, with the help of the brakeman, to get these cows up and on their feet. That on arriving at Golddust station, fifty-two miles from Alexandria, he found four of the animals down, but that he got them up and had them standing on their feet when he left there. The next inspection was at Addis, about eight o'clock the next morning, when he found six of the animals down. That he called on the brakeman again and succeeded in getting the cattle on their feet, with the exception of one that was so badly trampled that he was nearly dead.

When the train reached Gouldsboro, eight or ten of the animals were down, four or five dead, and others injured. At this point, which is just across the river from New Orleans, the cattle were unloaded and the dead and injured, as alleged by plaintiff, were found.

There is no dispute about the number of cattle that were dead or injured. The cattle, that is the remaining thirty-four head, were loaded into the same car and a bar placed across to separate the weak and injured cattle from the large cattle. They were then moved to New Orlens and delivered at this destination.

As to the number of cattle that died in transit and the number that were injured, there is no dispute, and we think the value placed on same by the lower court is correct. Therefore, the only question for determination is that of liability of the defendant for the damage.

The car of cattle was not accompanied by plaintiff or any of his agents, and from the time the cattle were delivered to defendant's agent in the stock pen at Alexandria on the afternoon of February 4th, at two o'clock, until they were delivered at New Orleans on the afternoon of February 5th, or the morning of February 6th, they were entirely in the charge and control of defendant.

Plaintiff alleges that the direct, proximate cause of the injuries to the cattle was the negligence, carelessness, lack of attention, mishandling and failure properly

to care for them while in transit. Defendant contends that this being the only allegation of fault alleged by plaintiff, the question of improper loading of the cattle cannot be considered by the court. However true that might have been, the evidence is in the record without objection that the cattle were not properly loaded by defendant's agents at Alexandria, and in fact, the testimony is offered by the defendant.

James Leddy, testifying for defendant, said that at Gouldsboro when the cattle were reloaded, the veterinarian in the employ of defendant, ordered a partition made in the car to partition the weaker cattle off, and further says that:

"This car should have had a partition placed in this car at the point of origin to protect those small cattle from those heavy cows, which in my opinion, are worse than a bull not tied in a car."

At another place in his testimony, he says:

"No, sir, it was not caused by rough handling, my opinion is that there should have been a partition in the car. The weaker cattle should have been partitioned off from the strong cattle."

Subsection b of section 4 on bill of lading, reads as follows:

"When bedding or appliances or a character not generally in use in the transportation of live stock are required, they shall be furnished by the shipper at his own expense and he shall separate different kinds of stock when loaded in the same car by adequate strong partitions, and such stock shall be at the risk of the shipper as to any damage resulting from the insufficiency or inadequacy of any such bedding, appliance or partition."

This requirement on the bill of lading confirms the testimony of Leddy that a partition should have been put in the car to separate the small cattle from the large, heavy cattle. This clause is for the protection of defendant when the shipper loads the cattle and should likewise apply to the defendant when it relieves the shipper of that duty and undertakes of its own accord to load the cattle. Certainly these cattle were not properly loaded through no fault of plaintiff.

We think the pleadings were broadened by the testimony offered by defendant, and we would be justified in considering this negligence of defendant in deciding the case. However, the negligence of defendant from the time the car of cattle was placed in the train of seventy-two cars is so apparent that it is unnecessary to consider the manner of loading.

Before the train left Alexandria, the conductor discovered five or six head down; again at Golddust, fifty-two miles from Alexandria, he found a number down; and again at Addis, he found more of them down, and one was so nearly dead that he could not get up. He made no investigation to find out the cause of them being down and made no attempt to remedy the condition. He stated that he did not know anything about cows, intimating that he did not know what to do. Common sense should teach anyone that when the smaller cows were down in the car that the larger cattle would trample them to death, and it was clearly the duty of the conductor in charge of the train, upon discovering this condition, to take some action to remedy it—if necessary, set the car out and unload it and reload it properly. He could not shut his eyes to this situation and pull ahead, leaving the cattle to be trampled to death without being grossly negligent, which negligence his employer is responsible for. He should have had the

condition corrected before he left Alexandria. He had an opportunity to correct it at Golddust and again at Addis, when only one cow had been killed. He did nothing and his negligence is responsible for the damages to plaintiff.

Defendant relies on the clause in the bill of lading which reads as follows:

"Unless caused by the negligence of the carrier or its employees, no carrier shall be liable for or on account of any injury or death sustained by said live stock occasioned by any of the following causes: overloading, crowding one upon the other, escaping from cars, pens or vessels; kicking or goring; or otherwise injuring themselves or each other."

The above clause has been repeatedly held to be binding upon the shipper and we fully agree with the decision so holding. However, in this case we find that none of the injured or dead cows showed any signs of having been gored, and were killed and injured by being trampled to death after being down. The car was not overloaded nor was it crowded, as shown by defendant's agent who supervised the loading, and all were in good condition when the car was loaded.

(1) Defendant was negligent in the manner of loading the cattle in the car; and

(2) Defendant's agent, the conductor, was grossly negligent in not attempting to remedy the condition when he discovered it at Alexandria, Golddust and Addis, and his negligence was the proximate cause of the death and injury of the cattle, and the resultant damage to plaintiff.

The judgment of the lower court is correct, and it is now ordered, adjudged, and decreed that the judgment of the lower court appealed from be affirmed, with all costs.

McGREGOR, J., dissents.